The STATE of Ohio, Appellee,

v.

HIGGS, Appellant.

[Cite as *State v. Higgs* (1997), 123 Ohio App.3d 400.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 96–T–5450.

Decided Oct. 1, 1997.

*Dennis Watkins*, Trumbull County Prosecuting Attorney, for appellee.

*Michael A. Partlow*, for appellant.

**402**

FORD, Presiding Judge.

Appellant, Kevin B. Higgs, brings this delayed appeal from a judgment of the Trumbull County Court of Common Pleas finding him guilty upon acceptance of his guilty plea to a charge of robbery, R.C. 2911.02, with a firearm specification, R.C. 2941.141.

Appellant was indicted on August 6, 1993, on a charge of aggravated robbery, R.C. 2911.01(A)(1), with a firearm specification, R.C. 2941.141. On November 17, 1993, appellant pleaded guilty to robbery, R.C. 2911.02, with a firearm specification. The trial court then sentenced appellant to the Lorain Correctional Institution at Grafton, Ohio, for an indeterminate period of four to fifteen years, plus three years of actual incarceration on the firearm specification, to be served consecutively to the principal sentence. Appellant filed a motion for leave to file a delayed appeal with this court on June 6, 1996, which this court granted on July 3, 1996. Appellant now asserts the following as error: [1]

1 "The trial court erred, to the prejudice of [appellant], by accepting a guilty plea to robbery which was not given knowingly and voluntarily."

2 "The trial court erred, to the prejudice of [appellant], by accepting a guilty plea pursuant to a firearms specification, which was not given knowingly and voluntarily."

Appellant asserts three arguments in support of the proposition that his plea to the robbery charge was not given knowingly and voluntarily. First, appellant argues that he did not understand the nature of the charges against him. Second, he claims that the trial court never instructed him that the state would need to prove his guilt beyond a reasonable doubt. Third, he claims that the trial court incorrectly informed him of the maximum penalty involved.

■ Generally, a guilty plea waives all errors that may have occurred before the plea, *unless* the plea is not given knowingly and voluntarily. *State v. Kelley* (1991), 57 Ohio St.3d 127, 130, 566 N.E.2d 658, 660–661; *State v. Barnett* (1991), 73 Ohio App.3d 244, 249, 596 N.E.2d 1101, 1104. Crim.R. 11(C)(2) provides the procedure for ensuring that a guilty plea is made knowingly and voluntarily, and states:

"(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

---

1. Appellee's motion for an extension of time to file its brief was overruled by this court on February 24, 1997. Therefore, appellee has not filed a brief in this matter.

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.

"(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.

"(c) Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself."

■ The federal constitutional rights guaranteed by Crim.R. 11(C)(2) are (1) "the privilege against * * * self-incrimination," (2) "the right to trial by jury," and (3) the "right to confront one's accusers." *Boykin v. Alabama* (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279; *State v. Nero* (1990), 56 Ohio St.3d 106, 107, 564 N.E.2d 474, 475–476. The Supreme Court of Ohio has held that "Crim.R. 11(C)(2) *requires* the trial judge to *personally inform* the defendant of the *constitutional guarantees* he waives by entering a guilty plea." (Emphasis added.) *Id.* at 107, 564 N.E.2d at 476. Concerning these constitutional rights, strict compliance with Crim.R. 11(C) is mandatory before it can be determined that a plea was given knowingly. *State v. Grundy* (Jan. 25, 1991), Trumbull App. No. 89–T–4251, unreported, at 7, 1991 WL 6017. However, the trial court need only substantially comply with the nonconstitutional requirements of Crim.R. 11(C)(2). *State v. Stewart* (1977), 51 Ohio St.2d 86, 93, 5 O.O.3d 52, 56, 364 N.E.2d 1163, 1167. See, also, *State v. Billups* (1979), 57 Ohio St.2d 31, 11 O.O.3d 150, 385 N.E.2d 1308, syllabus. In order to satisfy the requirement of substantial compliance, an appellate court must view the totality of the circumstances and determine whether appellant has suffered prejudice. *State v. Flint* (1986), 36 Ohio App.3d 4, 9, 520 N.E.2d 580, 584–585.

■ In support of his assertion that he did not understand the charges against him, appellant claims that the trial court did not adequately explain the elements of robbery when appellant asserted that he did not understand them. At appellant's plea hearing, the following colloquy occurred between appellant and the trial court:

"[THE COURT]: Do you know you have the right to have a jury of twelve people sitting over there hear this case and in order for you to be convicted they would have to find as to the principal offense and as to the specification that you did in attempting or committing a theft offense or in fleeing immediately after that attempt or offense use or threaten the immediate use of force against

another in this county and that in the commission of robbery you did have a firearm on or about your person; do you understand that?

"[APPELLANT]: No. I didn't understand what you said.

"[THE COURT]: In order for you to be convicted if we had a trial here, twelve people would unanimously have to find you guilty of each and every element of the crime of robbery and of the specification that you had a firearm when you committed it. I have to be sure you are waiving the right to a jury trial. Are you?

"[APPELLANT]: Yes, sir."

In *State v. Swift* (1993), 86 Ohio App.3d 407, 621 N.E.2d 513, this court faced a similar situation in which the defendant, in pleading guilty to a rape charge, expressed some confusion concerning the meaning of "force." The trial court attempted to clarify the misunderstanding. Nonetheless, we stated:

"The courts of this state have generally held that a detailed recitation of the elements of the charge is not required under Crim.R. 11(C)(2)(a). * * * The court's determination that the defendant understands the charge can be based on the surrounding circumstances, such as recitations of discussions between the defendant and his attorney.

"* * *

"In the instant case, the trial court did go on to explain what 'force' was to the defendant and how his actions were sufficient to satisfy the requirement. Unfortunately, the record does not reflect if the appellant then understood and agreed. * * * [T]his was not sufficient to show that the defendant was then aware of what 'force' was. Although not one of the cases says this directly, it would appear that *the burden upon the trial court becomes greater once there is an indication that the defendant is confused.*" (Emphasis added.) *Id.* at 412–413, 621 N.E.2d at 516–517.

Thus, since the record did not reflect that the defendant in *Swift* understood the meaning of force, we concluded that the defendant had not made a knowing plea. *Id.* at 413, 621 N.E.2d at 517.

In the present case, after appellant expressed confusion regarding the elements of robbery, the court restated the question in a different form, omitting the portion detailing the elements of robbery. Instead, the court simply asked whether appellant was waiving his right to a jury trial, and appellant responded affirmatively. However, it appears that appellant's confusion regarding the elements of the offense was never resolved. Therefore, appellant's guilty plea to the robbery charge was not made voluntarily; thus, that portion of appellant's first assignment is well taken.

■ Appellant's argument is further strengthened by the fact that he pleaded guilty to robbery when appellant was indicted on aggravated robbery. R.C. 2911.01(A)(1) states that "[n]o person, in attempting or committing a theft offense * * * shall * * * have a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control." [2] R.C. 2911.02 states that robbery occurs when a person, in attempting or committing a theft offense, uses or threatens the immediate use of force against another. Robbery is not a lesser included offense of aggravated robbery when a defendant is charged under R.C. 2911.01(A)(1) since force is not an element under that subsection of this statute. *State v. Merriweather* (1980), 64 Ohio St.2d 57, 59, 18 O.O.3d 259, 260–261, 413 N.E.2d 790, 791.

In *State v. Mancini* (Jan. 7, 1993), Cuyahoga App. No. 63892, unreported, 1993 WL 4721, at 1, the court held:

"[T]he acceptance of a guilty plea violates due process where three conditions are met: (1) the defendant pleads to an offense which is not a lesser included offense of the charged crime; (2) there is a failure to explain the additional elements of the offense to which the defendant will plead; and (3) under the facts of the indictment, the defendant could not have committed nor been convicted of the offense." See, also, [*State v.*] *Fletchinger* [51 Ohio App.2d 73, 5 O.O.3d 186, 366 N.E.2d 300]; *State v. Adams* (Oct. 31, 1985), Cuyahoga App. No. 49682, unreported, 1985 WL 8523.

In the case *sub judice,* all three requirements are present. First, appellant pleaded guilty to robbery, which is not a lesser included offense of aggravated robbery, R.C. 2911.01(A)(1). *Merriweather.* Second, the plea colloquy demonstrates that appellant did not comprehend the force element involved in robbery, which is not required for an aggravated robbery charge under R.C. 2911.01(A)(1). Third, the indictment does not allege the use of force or the threat of force; thus, appellant could not have been convicted of robbery. Consequently, appellant's due process rights were violated by his plea to the robbery charge.

Appellant's second argument under the first assignment is that the trial court erred by failing to inform him that appellee was required to prove his guilt beyond a reasonable doubt. Our first inquiry regarding this assertion is whether advising a defendant of the standard of proof in a criminal trial is a constitutional right requiring strict compliance with Crim.R. 11(C), or whether it is a nonconstitutional right requiring only substantial compliance.

---

**2.** Although the indictment does not explicitly state that appellant violated R.C. 2911.01(A)(1), the language in the indictment clearly reveals that appellant was indicted under this subsection.

The constitutional nature of the requirement of proof of beyond a reasonable doubt has been unequivocally stated by the Supreme Court of the United States. *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375, stated:

"Lest there remain any doubt about the *constitutional stature of the reasonable-doubt standard,* we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (Emphasis added.) [3]

■ In citing *Boykin,* the Supreme Court of Ohio has held that the constitutional right of the privilege against self-incrimination, the right to a trial by jury, and the right to to confront one's accusers require strict compliance with the mandates of Crim.R. 11(C). *Nero,* 56 Ohio St.3d at 107, 564 N.E.2d at 475–476. Although *Boykin* did not specifically hold that informing the defendant of the standard of proof at a Crim.R. 11 plea hearing requires strict compliance, it is axiomatic that a state court may provide an accused more constitutional protections than federal courts. See *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163, paragraph one of the syllabus. Conversely, it is fundamental that a state cannot establish a constitutional standard regarding individual rights that is below the federal mandate as applied to state action. Despite the lack of the inclusion of the reasonable-doubt standard in the list of constitutional rights in *Boykin,* based on the analysis of *In re Winship, supra,* it is our view that Ohio's courts must require strict compliance regarding this right.

Additionally, Justice William Douglas, author of the *Boykin* opinion, later explained:

"The *Boykin* enumeration [of constitutional rights] was *illustrative, not exhaustive.* The necessity that one be found guilty beyond a reasonable doubt * * * [is] involved. Ohio seems to recognize the need to accommodate constitutional rights other than the three mentioned in *Boykin,* since its own supreme court has held that a trial judge must advise the defendant of his right to be proven guilty beyond a reasonable doubt before accepting a guilty plea. *State v. Griffey* [1973], 35 Ohio St.2d 101 [64 O.O.2d 62] 298 N.E.2d 603." (Emphasis added.) *Johnson v. Ohio* (1974), 419 U.S. 924, 926, 95 S.Ct. 200, 200, 42 L.Ed.2d 158, 159 (Douglas, J., dissenting).

In *Griffey,* at the syllabus, the Supreme Court of Ohio held:

---

3. Parenthetically, we note that *In re Winship* is a state case; therefore, the beyond-a-reasonable-doubt standard is applicable to the states through the Fourteenth Amendment.

"A defendant's plea of guilty in a felony case was voluntarily, knowingly and intelligently made where the record discloses that * * * the trial court inquired of defendant whether he understood that he had a right to trial by jury or to the court, *and informed defendant that the state was obligated to prove his guilt beyond a reasonable doubt* * * *." (Emphasis added.) 35 Ohio St.2d 101, 64 O.O.2d 62, 298 N.E.2d 603.

Despite the implication of the holding of *Griffey* and Justice Douglas's interpretation of *Boykin*, the Supreme Court of Ohio has stated, in a footnote, that a trial court must only substantially comply with Crim.R. 11(C) in informing a defendant of his right to require the state to prove his guilt beyond a reasonable doubt. *State v. Sturm* (1981), 66 Ohio St.2d 483, 484, 20 O.O.3d 403, 404, 422 N.E.2d 853, 854, fn. 2. Significantly, *Sturm* did not cite *Griffey*.

The failure of Ohio's courts to expressly recognize the constitutional stature of the beyond-a-reasonable-doubt standard has been thoroughly criticized. In *State v. Teter* (Sept. 5, 1990), Wayne App. No. 2543, unreported, at 5, 1990 WL 129246 (Mahoney, J., dissenting), Judge Mahoney wrote:

"I personally fail to see how our Supreme Court can require that a defendant be informed in an intelligent manner as to four of the constitutional rights set forth in Rule 11 but only a 'substantial compliance' standard as to the fifth constitutional right set forth in Rule 11. This is an anomaly. Additionally, the latter standard requires a showing of prejudice by the omission to inform whereas the former does not. It is incongruous. In this case, there was a complete omission to reasonably inform the defendant of the state's burden of proof beyond a reasonable doubt. This requires reversal *per se* in my opinion." See, also, *State v. Scott* (1996), 113 Ohio App.3d 401, 407–409, 680 N.E.2d 1297, 1300–1302 (McMonagle, J., dissenting).

■ Therefore, due to the constitutional nature of the burden of proof beyond a reasonable doubt, we hold that a trial court must strictly comply with the mandates of Crim.R. 11(C) when advising a defendant of his right to a jury trial during which the state must prove his guilt beyond a reasonable doubt. Therefore, since the trial court completely failed to advise appellant concerning this burden of proof, appellant's plea was not knowingly made and is, therefore, vacated.

Assuming, *arguendo*, that the trial court needed only to substantially comply with this requirement, we conclude that such failure to instruct appellant regarding the burden of proof does not rise to the crest of substantial compliance with Crim.R. 11(C)(2). The trial court not only failed to inform appellant that appellee had the burden of proof, but also did not advise appellant that appellee's burden

of proof was beyond a reasonable doubt. Thus, appellant's second argument under the first assignment of error is also well taken.

█ Appellant's third assertion under the first assignment of error is that his plea was not given knowingly, because the trial court erroneously stated the maximum penalty for robbery with a firearm specification. The trial court must advise the defendant of the maximum possible penalty for the charged offense. *State v. Gibson* (1986), 34 Ohio App.3d 146, 147, 517 N.E.2d 990, 991–992.

█ In the present case, the trial court instructed appellant as follows:

"[THE COURT]: Mr. Higgs, do you understand that by entering a plea of guilty here, regardless of any representations made to you by the prosecutor or by your attorney, that you are facing and I can impose three, four, five, six, seven or eight years minimum to fifteen years on the principal offense and in addition thereto prior and consecutive thereto a term of three years of actual incarceration *which would really be a total of eleven to fifteen years;* do you understand all that?" (Emphasis added.)

The court correctly stated the maximum penalty in the first portion of that statement, but was incorrect when it stated that the total potential term was eleven to fifteen years. The maximum prison term for robbery, R.C. 2911.02(A), an aggravated felony of the second degree, is fifteen years, with a maximum fine of $7,500. R.C. 2929.11. The firearm specification carries a sentence of three years to be served consecutively to the robbery sentence. Thus, the trial court was incorrect in advising appellant that the maximum term was eleven to fifteen years. Further, the court completely failed to refer to the possibility of the fine of $7,500. Thus, the third prong of appellant's argument is also with merit. Accordingly, appellant's first assignment of error is well taken.

█ In the second assignment, appellant asserts that his guilty plea to the firearm specification was not entered knowingly and voluntarily. In support of this assignment, appellant first argues that he was never notified that appellee would need to prove that he possessed an operable firearm.

Generally, Crim.R. 11(C)(2) does not require the trial court to make a detailed recitation of the elements of a charge in the absence of an indication of confusion from the defendant. *Swift*, 86 Ohio App.3d at 412, 621 N.E.2d at 516–517. In the present case, appellant indicated no confusion concerning the elements of the firearm specification; thus, the trial court was not required to explain the operability requirement to him. Therefore, appellant's argument is without merit.

Appellant next argues that the trial court erred by accepting appellant's guilty plea when he denied that he possessed a firearm at the time of the robbery.

Once a defendant states that he is confused regarding a charge to which he is pleading guilty, the trial court must make a further inquiry to determine whether the defendant understands the charges against him. *Swift,* 86 Ohio App.3d at 413, 621 N.E.2d at 517.

■ In the instant case, when the trial court asked appellant how he wished to plead, appellant responded "I plead guilty, but I didn't—." The court then asked the prosecutor for the factual basis of the plea. Shortly thereafter, the following exchange occurred between appellant and the court:

"[THE COURT]: * * * Do you have anything to say before the Court pronounces sentence?

"[APPELLANT]: Yes. Well, I know it probably doesn't make any difference to you, but I didn't even have a gun that day. So that's about all I got to say.

"[THE COURT]: Do you wish to say anything about the people that you robbed?

"[APPELLANT]: I didn't mean to—I really don't even—

"[THE COURT]: Anything further, Mr. DeMatteis?

"[APPELLANT]: Excuse me. The night before that I had went to work and picked up my check early and left work, went and got high and spent all my money knowing that I had bills to pay. And the only thing I just—instead of going home to my wife, I did it again.

"[THE COURT]: Recommendation by the state?"

There are two significant problems with the manner in which the trial court interacted with appellant. First, when appellant asserted that he was not guilty of the firearm specification, the trial court failed to make a further inquiry regarding whether appellant understood the nature of the specification. Further, the record seems to indicate that appellant's statement "I really don't even—" was interrupted by the court in changing the subject from appellant's potential confusion to the sentencing recommendation by appellee. Therefore, we also conclude that appellant's guilty plea to the firearm specification was not made knowingly and, therefore, is invalid. Thus, appellant's second assignment of error has merit.

For the foregoing reasons, appellant's assignments of error are well taken. The judgment of the Trumbull County Court of Common Pleas is reversed, and this case is remanded for proceedings consistent with this opinion.

NADER, J., concurs in part and dissents in part.

WILLIAM M. O'NEILL, J., concurs.

NADER, Judge, concurring in part and dissenting in part.

I respectfully disagree with the majority's analysis of three issues.

First, I disagree that the requirement in Crim.R. 11(C)(2)(c) that the trial court inform the accused that the state must prove the charge beyond a reasonable doubt is mandatory in the same sense as are the four constitutional rights set forth in *State v. Ballard* (1981), 66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115, so that the failure to relate this to the accused necessitates reversal.

Most Ohio courts that have dealt with this question have concluded that informing the accused of the state's burden of proof is not essential, because the *Ballard* court failed to mention it.[1] I find the reasoning sound. The *Ballard* court has clearly stated that courts are required to recite only those four rights— the privilege against self incrimination, the right to a jury trial, the right to confront his accusers, and the right to compulsory process—and no others. Until the Ohio Supreme Court clearly says otherwise, I choose not to add more requirements to that list.

Additionally, even if the tenor of the *Ballard* opinion did not impliedly exclude other rights not expressly set forth as mandatory, other reasoning therein militates against finding the Crim.R. 11 directive regarding the state's burden of proof to be mandatory. The Supreme Court in *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, mentioned only three rights which an appellate court cannot presume to have been waived from a silent record: (1) the privilege against self-incrimination, (2) the right to a trial by jury, and (3) the right to confront one's accusers. The *Ballard* court stated that although the *Boykin* court did not mention the right of a defendant to compulsory process in order to call witnesses to testify on his behalf, this right is expressly guaranteed by the Sixth Amendment to the United States Constitution, and, like those rights mentioned in *Boykin,* is a trial right which the defendant waives by pleading guilty. 66 Ohio St.2d at 477, 20 O.O.3d at 399, 423 N.E.2d at 118, fn. 4. The selection criteria appear to be that only rights that are *expressly* stated in the federal Constitution must be recited to defendants. Nowhere in the Constitution is the state's burden of proof expressly stated. That standard is only inferred from the Due Process Clause. Thus, it would appear the state's burden of proof

---

1. *State v. Scott* (1996), 113 Ohio App.3d 401, 680 N.E.2d 1297; *State v. Binion* (Apr. 18, 1996), Cuyahoga App. No. 69336, unreported, 1996 WL 191757; *State v. Hines* (May 23, 1995), Franklin App. No. 94APA10–1428, unreported, 1995 WL 318742; *State v. McGhee* (Apr. 21, 1994), Cuyahoga App. Nos. 65214, 65215, and 65216, unreported, 1994 WL 144496; *State v. McDowell* (Sept. 30, 1993), Erie App. No. E–92–78, unreported, 1993 WL 381576; *State v. Agresti* (May 27, 1993), Cuyahoga App. No. 64174, unreported, 1993 WL 180222; *State v. Teter* (Sept. 5, 1990), Wayne App. No. 2543, unreported, 1990 WL 129246. Ignoring the weight of this authority, the majority relies on the dissenting opinions in *Teter* and *Scott.*

does not qualify as a right of such significance that guilty pleas cannot be affirmed without the accused's being informed of it.

Furthermore, adding another right in addition to the four mandatory *Ballard* rights is unnecessary in light of the overall goal of an appellate court to ascertain whether, *under the totality of the circumstances,* a plea was knowingly, intelligently and voluntarily made. The point of *Boykin* was that the trial court did not say anything to the defendant when he entered his pleas, and the defendant asked no questions of the court. Since it was impossible to determine if the pleas were *knowingly* made on a record where the accused was informed of virtually none of the rights he was waiving, the Supreme Court reversed the convictions and vacated the pleas.

The situation is completely different where the record shows that the accused was given a great deal more information than the defendant in *Boykin*. Where a criminal defendant in Ohio is told of his four *Ballard* rights, not only is he informed that he has the right to a trial, but he is told that there would be a number of procedural safeguards at that trial to protect him from governmental overreaching. A jury would be seated to determine his guilt, rather than a judge. He would have the right to confront his accusers and to present the testimony of witnesses on his own behalf, by compulsory process, if necessary, and he would not be required to testify against himself.

If, upon being so informed, the defendant knowingly gives up the right to such a trial, the waiver logically and necessarily extends to the procedural safeguards that the court explicitly mentioned, which are incidental to the trial. Likewise, the waiver of the trial and the explicitly stated *Ballard* rights logically and necessarily extends to numerous other procedural safeguards that are not specifically mentioned but are also incident to the trial. See *United States v. Green* (C.A.5, 1989), 882 F.2d 999, 1007. *United States v. Guichard* (C.A.5, 1986), 779 F.2d 1139, 1142. The state's burden of proof is merely one such procedural safeguard.

Thus, telling the accused about the state's burden of proof *in addition* to the four *Ballard* rights is not absolutely necessary to determine that the defendant subjectively understood that he was waiving all incidental procedural safeguards when he decided to forgo the entire trial. If this piece of information is not critical to appellate review, then we should not lay down a bright-line rule invalidating an otherwise acceptable plea merely because the trial court neglected to mention the burden of proof in addition to the *Ballard* rights.

Instead, such an omission should be analyzed under the substantial-compliance standard of *State v. Stewart* (1977), 51 Ohio St.2d 86, 5 O.O.3d 52, 364 N.E.2d 1163. A plea entered without this information should still be valid if the trial court recited the *Ballard* rights and the reviewing court can ascertain from the

totality of the circumstances that the defendant knew what he was doing when he pled. Of course, the defendant could prove some special prejudice, as in a case where he mistakenly thought the state only had to prove the charge by a preponderance of the evidence, and would have gone to trial if he had known the state's burden of proof was so heavy.

Second, I disagree with the assertion that the trial judge failed to adequately inform Higgs of the maximum penalty involved. Admittedly, the judge misstated the maximum penalty on the robbery charged, coupled with the firearm specification, when he said the total sentence could be "eleven to *fifteen* years." He meant to say *"eighteen* years." But earlier in that same breath, the judge stated:

"I can impose three, four, five, six, seven, or eight years minimum *to fifteen years on the principal offense and in addition thereto prior and consecutive thereto a term of three years of actual incarceration * * *."* (Emphasis added.)

In the second paragraph of the syllabus of *Ballard, supra,* it is held that a trial court need only explain the Crim.R. 11 information "in a manner reasonably intelligible to the defendant." In *United States v. Musa* (C.A.7, 1991), 946 F.2d 1297, the defendant claimed that the district court judge did not adequately explain the nature of the penalty involved under Fed.R.Crim.P. 11 because he misstated the statutory minimum sentence to be "three years, which would be sixty months" rather than five years. *Id.* at 1306. The court held that the defendant, being a senior in college, could readily do the arithmetic necessary to determine that sixty months equals five years. *Id.* at 1306.

In this case, the trial judge adequately informed Higgs of the maximum term in a reasonably intelligible manner when he gave the correct formula by which it could be easily calculated. I presume Higgs could add three to fifteen and thereby discover on his own that his maximum sentence was indeed eighteen years.

Third, I do not agree that it is necessary to address the second assignment of error. Error was shown in the first assignment because the trial court violated its duty under *State v. Swift* (1993), 86 Ohio App.3d 407, 621 N.E.2d 513, to clear up the confusion regarding the elements of robbery when Higgs stated that he did not understand what the court had said. For this reason, the conviction on the underlying robbery charge must be reversed. *Id.* Since a firearm specification is a sentencing enhancer and not an independent crime, *State v. Loines* (1984), 20 Ohio App.3d 69, 72–73, 20 OBR 88, 91–93, 484 N.E.2d 727, 731–732, a valid conviction on the underlying charge is a necessary prerequisite to the imposition of a term of actual incarceration under former R.C. 2929.71, *State v. Tyson* (1984), 19 Ohio App.3d 90, 93, 19 OBR 175, 177–178, 482 N.E.2d 1327, 1329–1330. Reversal of the underlying conviction necessarily invalidates the conviction on the specification. See *id.* Also, Higgs entered only one plea,

whereas former R.C. 2929.71(A) requires a separate plea to the firearm specification. The second assignment of error is moot because our disposition of the first assignment of error also invalidates the sentence imposed on the specification; therefore, we should not consider it. App.R. 12(A)(1)(c); 1992 Staff Note to App.R. 12(A).

These differences excepted, I concur in the rest of the opinion and in the judgment to reverse and remand this case for further proceedings.