OPINION
{¶ 1} Lance Pough ("appellant"), directly appeals the decision of the Trumbull County Common Pleas Court. Appellant was sentenced to fifteen years to life in prison, plus three years on a firearm specification, for his involvement in the 1998 shooting death of Braderick McMillan. For the following reasons, we affirm the decision of the trial court in this matter.
 {¶ 2} On May 5, 2000, the Trumbull County Grand Jury returned a secret indictment against appellant. In that indictment, appellant was charged on one count of aggravated murder, a violation of R.C. 2903.01(A), along with three death penalty specifications, violations of R.C.2929.04(A)(2), (3), (8), and a firearm specification, in violation of R.C. 2941.14.5(A). The second count of appellant's indictment sounded in conspiracy to commit aggravated murder, a violation of R.C. 2923.03(A)(1) and R.C. 2903.02(A), along with another firearm specification, in violation of R.C. 2941.14.5(A).
 {¶ 3} Appellant originally entered a plea of not guilty to both counts on May 12, 2000. However, pursuant to the terms of a subsequent plea agreement, appellant entered a guilty plea to an amended version of count two of the indictment on May 16, 2000. As amended, count two charged appellant with complicity to commit murder, a violation of R.C.2923.03(A)(1) and R.C. 2903.02(A), along with a firearm specification, in violation of R.C. 2941.14.5(A). Upon a motion by appellee, the trial court nolled count one of the indictment. On November 15, 2000, appellant was sentenced to fifteen years to life in prison, along with three years for the firearm specification, for his role in the 1998 murder of Braderick McMillan. This appeal followed, and appellant asserts two assignments of error for our review:
 {¶ 4} "[1.] The appellant's guilty plea was not made on a knowing and voluntary basis due to ineffective assistance of trial counsel, in violation of the appellant's federal and constitutional rights.
 {¶ 5} "[2.] The trial court erred as a matter of law, by accepting appellant's guilty plea to the amended indictment."
 {¶ 6} A plea of guilty "waives the right to claim that the accused was prejudiced by constitutionally ineffective counsel, except to the extent that the defects complained of caused the plea to be less than knowing and voluntary." State v. Barnett (1991), 73 Ohio App.3d 244,249. Counsel's performance "will not be deemed ineffective unless the defendant can demonstrate that his counsel's performance was deficient, and that there is a reasonable probability that, but for counsel's errors, the resulting proceeding would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, quoting Strickland v. Washington
(1984), 446 U.S. 668, 687-694. In addition, to establish prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." State v. Lewis
(Aug. 19, 1994), 11th Dist. No. 92-T-4687, 1994 Ohio App. LEXIS 3652, quoting Hill v. Lockhart (1985), 474 U.S. 52, 59.
 {¶ 7} In his first assignment of error, appellant argues that his guilty plea was "less than knowing and voluntary due to the fact that his trial counsel failed to either actually file and pursue a motion to suppress * * * or even advise the appellant that such proceedings were an option."
 {¶ 8} Appellant has failed to establish either portion of the test enunciated in Bradley. The only claims essentially raised by appellant are that his trial counsel should have filed a motion to suppress, or at least advised appellant of that option. However, appellant has failed to show how the record before us demonstrates the nature of the conversations he had with his trial counsel, and how those discussions affected his decision to plead guilty. Indeed, the record before this court indicates that appellant signed a plea agreement indicating that, after discussions with his counsel and the trial court, appellant had a full understanding of the charges before him and the subsequent consequences of his guilty plea.
 {¶ 9} Turning to appellant's criticism that his trial counsel should have filed a motion to suppress, appellant has failed to show that he would not have pleaded guilty had the motion to suppress been heard and ruled upon. In fact, the record shows that appellant would only have proceeded to trial if he had been successful on the motion to suppress. Thus, appellant's argument necessarily turns on a finding that he had a meritorious argument had the motion been ruled upon.
 {¶ 10} Appellant argues that his statements made at the plea hearing and sentencing hearing provide a clear picture as to the merit of his argument. However, the record before us fails to support appellant's argument. Indeed, appellant does not even identify which evidence could have or should have been suppressed. Without any of this information, appellant cannot meet his burden of proving that his counsel's representation was ineffective. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." State v. Gibson (1980),69 Ohio App.2d 91, 95; Lewis, supra.
 {¶ 11} The record does indicate that appellant was involved in both federal and state cases at the time his plea was made in the case before us. The record further indicates that appellant's trial counsel ably negotiated the state's recommendation to the trial court that appellant's state sentence be served concurrently with any federal sentence appellant was given, as opposed to consecutively. "Given the strong presumption that counsel's performance constituted reasonable assistance, counsel's decision to pursue a favorable plea bargain, instead of pursuing the motion to suppress, must be viewed as a tactical decision and does not rise to the level of ineffective assistance."Lewis, supra, quoting State v. Kelly (Oct. 25, 1990), 8th Dist. No. 57601, 1990 Ohio App. LEXIS 4628.
 {¶ 12} Appellant's vague references to complications with the prosecutor in his federal case fall far short of the proof necessary to establish the ineffectiveness of his trial counsel in the case before us. When an appellant makes allegations of the ineffectiveness of his trial counsel based upon facts that do not appear in the record, these allegations should be reviewed through post-conviction relief, not on direct appeal. State v. Cooperrider (1983), 4 Ohio St.3d 226, 228.
 {¶ 13} For the foregoing reasons, appellant's first assignment of error is not well taken and is without merit.
 {¶ 14} In his second assignment of error, appellant claims that based on statements made at the plea and sentencing hearings, the trial court accepted a plea that was less than knowing and voluntary. Before we proceed, we note that appellant entered, and the trial court accepted, his guilty plea at a plea hearing on May 15, 2000. The subsequent sentencing hearing was held on November 15, 2000. In contrast to appellant's assertions, this court cannot fathom how any comments made at the sentencing hearing in November 2000 could have influenced the trial court's acceptance of appellant's plea in May of 2000. Therefore, we concern ourselves with the events of the May 15, 2000 plea hearing.
 {¶ 15} In support of his argument, appellant cites Crim.R. 11(C)(2)(a), which states in pertinent part: "In felony cases the court may refuse to accept a plea of guilty or no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following: (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."
 {¶ 16} The primary requirements of Crim.R. 11(C) are constitutional. To comply with the constitutional requirements of Crim.R. 11(C), the court must explain to the defendant that he is waiving: (1) the Fifth Amendment privilege against self-incrimination, (2) the right to a trial by jury, (3) the right to confront one's accusers, (4) the right to compulsory process of witnesses, and (5) the right to be proven guilty beyond a reasonable doubt. State v. Nero
(1990), 56 Ohio St.3d 106, citing Boykin v. Alabama (1969), 395 U.S. 238,242-243; State v. Ballard (1981), 66 Ohio St.2d 473, paragraph one of the syllabus; State v. Higgs (1997), 123 Ohio App.3d 400, 407. The court must strictly comply with these requirements, and the failure to strictly comply invalidates a guilty plea. Higgs, supra, at 403.
 {¶ 17} The requirements listed in Crim.R. 11(C)(2)(a) are non-constitutional. While literal compliance is the preferred practice, a guilty plea is valid as long as the court substantially complies with these requirements. Nero, supra at 108. The Supreme Court of Ohio has stated that: "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect." Id., citations omitted. The test is, but for the trial court's error, "whether the plea would have otherwise been made." Id.
 {¶ 18} The record before us clearly indicates that the trial court satisfied the requirements listed in Nero. At the plea hearing, the following colloquy took place:
 {¶ 19} "THE COURT: If you wanted to in this case you could have a jury trial. That means that the Court would impanel 12 people. In order to find you guilty they would have to find to their unanimous satisfaction, that means all 12 would have to agree, that the State of Ohio proved its case against you by a burden of proof called beyond a reasonable doubt. In this particular matter they would have to prove that you did while in Trumbull County, Ohio, acting with the kind of culpability required for the commission of an offense, solicited or procured another to commit the offense of murder, which is to purposely cause the death of another; to wit, Braderick McMillan, and further that you had a firearm on or about your person or under your control while committing the offense and displayed, brandished or indicated that you possessed a firearm or used it to facilitate the offense."
 {¶ 20} "THE COURT: Do you understand what your rights to a jury trial would be and what the State would have to prove?"
 {¶ 21} "THE DEFENDANT: Yes, sir."
 {¶ 22} "THE COURT: Do you understand by entering a guilty plea here today you would be giving up those rights?"
 {¶ 23} "THE DEFENDANT: Yes, sir."
 {¶ 24} "THE COURT: Also at that jury trial you have the right to cross examine or confront witnesses and that means you or your attorney could ask questions of any witnesses called upon to testify against you. You also have the right to compulsory process and that means you or your attorney could subpoena witnesses to testify on your own behalf. You also have a Fifth Amendment right and that means the State cannot force or compel you to testify against yourself. Do you understand each and every of those individual rights?"
 {¶ 25} "THE DEFENDANT: Yes, sir."
 {¶ 26} "THE COURT: Do you understand by entering a guilty plea here today you would be giving up each and every of those individual rights?"
 {¶ 27} "THE DEFENDANT: Yes, sir."
 {¶ 28} As mentioned above, the foregoing exchange corroborates the trial court's strict compliance with the constitutional requirements of Crim.R 11(C). As for substantial compliance, the trial court further advised appellant of his rights on appeal, the right to appointed counsel, and the right to a transcript, if appellant could not afford one. When questioned if he understood those rights and that by pleading guilty he would be giving up those rights, appellant answered: "Yes, sir." When asked by the trial court if any promises or threats had been made to secure his plea of guilty, appellant complained about the prosecution in his federal case stating: "* * * it was a representation that took place on my federal case that kind of like led to me talking to the State." The trial court then reminded appellant that: "Well, you understand this Court has nothing to do with the federal case?" To which appellant replied: "Yeah, I understand that."
 {¶ 29} Subsequently, the following exchange took place between appellant, appellant's counsel and the trial court:
 {¶ 30} "THE COURT: Are you satisfied with your attorneys in this case?"
 {¶ 31} "THE DEFENDANT: (Witness nods head affirmatively.)"
 {¶ 32} "THE COURT: Do you think they've done everything they could on your behalf?"
 {¶ 33} "THE DEFENDANT: Yes."
 {¶ 34} "THE COURT: Are you satisfied your client understands his constitutional rights and the effect of the waiver thereof?"
 {¶ 35} "ATTORNEY RICH: Yes, he does, your Honor."
 {¶ 36} "THE COURT: The Court will accept a plea. How do you plead to the amended indictment?"
 {¶ 37} "THE DEFENDANT: Guilty."
 {¶ 38} Appellant then proceeded to admit on the record that the signature on the plea agreement was his, and when asked if he signed it freely and voluntarily, appellant responded: "Yes."
 {¶ 39} In discussing appellant's concerns over the federal prosecutor, appellant's attorney then stated:
 {¶ 40} "ATTORNEY RICH: I believe the federal prosecutor made some representations regarding the State case, meaning this case, of what he would recommend and what he would promise the defendant, but that was cleared up with Assistant Prosecutor Kirr and myself and Lieutenant Bishop today and actually prior, prior to coming in here today."
 {¶ 41} "THE COURT: Well, again, you understand that this is going to be a recommendation based upon some other things that are in the Rule 11 agreement, okay, and I can't speak for the federal government; you understand all that?"
 {¶ 42} "THE DEFENDANT: I think they spoke on the State's behalf and they shouldn't have spoke on the State's behalf, that's what happened."
 {¶ 43} "THE COURT: Well, whatever. But, I mean, did you still want to go through with this?"
 {¶ 44} "THE DEFENDANT: Yeah I want to go through with it."
 {¶ 45} The record before us indicates that appellant knowingly, intelligently, and voluntarily entered, and the trial court accepted, a plea of guilty at the May 15, 2000 plea hearing. Even after appellant vented his frustration with the federal prosecutor, the trial court admirably gave appellant an opportunity to withdraw his guilty plea, which appellant refused to do. In accepting appellant's guilty plea, we hold that the trial court fully and substantially complied with the requirements of Crim.R. 11(C)(2)(a). We also hold, contrary to appellant's argument, that the trial court was not required to inform appellant of any possible suppression issues during the plea hearing. See, State v. Taylor (May 18, 1992), 2nd Dist. No. 12570, 1992 Ohio App. LEXIS 2579; State v. Drawdy (Aug. 4, 1988), 8th Dist. No. 52154, 1988 Ohio App. LEXIS 3094.
 {¶ 46} Appellant has failed to show any prejudicial error in the context of the plea hearing. Additionally, appellant has failed to demonstrate that, even if there were prejudicial error, appellant would not have entered a plea of guilty if a motion to suppress had been filed and ruled upon. Appellant's second assignment of error is without merit.
 {¶ 47} Based on the foregoing reasons, appellant's first and second assignments of error are not well taken and are without merit. Therefore, the decision of the trial court in this matter is affirmed.
DONALD R. FORD, J., JUDITH A. CHRISTLEY, J., concur.